```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF VIRGINIA
 2                        ALEXANDRIA DIVISION

 3      --------------------------x
        UNITED STATES OF AMERICA,  :    Criminal Action No.:
 4                                 :    1:22-cr-16
             versus                :
 5                                 :    Tuesday, May 3, 2022
        KODIE RICHARDS,            :
 6                                 :
                  Defendant.       :
 7      --------------------------x

 8          The above-entitled change of plea hearing was heard
        before the Honorable Leonie M. Brinkema, United States
 9      District Judge.  This proceeding commenced at 9:30 a.m.

10                      A P P E A R A N C E S:

11      FOR THE GOVERNMENT:    NATASHA SMALKY, ESQUIRE
                               OFFICE OF THE UNITED STATES ATTORNEY
12                             2100 Jamieson Avenue
                               Alexandria, Virginia  22314
13                             (703) 299-3700

14      FOR THE DEFENDANT:     BRUCE COOPER, ESQUIRE
                               LAW OFFICE OF BRUCE M. COOPER
15                             717 D Street, NW
                               Suite 300
16                             Washington, D.C.  20004
                               (202) 628-8494

17

18          COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

19

20

21

22

23

24

25
                                                              1
```

<u>P R O C E E D I N G S</u>

1

2          THE DEPUTY CLERK:  Criminal Case 22-16, United

3    States of America versus Kodie Matthew Richards.

4          Would counsel please note their appearances for

5    the record.

6          THE COURT:  Give us a second to get the defendant

7    in here.

8          MS. SMALKY:  Good morning.  Natasha Smalky for the

9    United States.

10          THE COURT:  Ms. Smalky, are there any changes to

11    the paperwork from what was sent to chambers?

12          MR. COOPER:  Your Honor, if I can address the

13    Court on that.

14          THE COURT:  Counsel, your appearance, please.

15          MR. COOPER:  I'm sorry, Your Honor.  Bruce Cooper

16    for Mr. Richards.  I apologize, Your Honor.

17          Your Honor, I apologize to the Court and to the

18    Government.  I should have let the Court know sooner.  My

19    client is going to plead to the indictment.  We are agreeing

20    to the statement of facts proffered by the Government.

21          THE COURT:  You don't want a plea agreement?

22          MR. COOPER:  That's correct, Your Honor.

23          THE COURT:  All right.  That's fine.  That's your

24    option, of course.

25          MR. COOPER:  I took the advice of someone not to

                                                        2

1   alert the Court earlier than today, and it was poor advice I

2   believe.  I should have alerted the Court, and I apologize

3   to the Government.  I should have alerted them as well.

4           THE COURT:  That's all right.  We'll take the

5   plea.

6           All right.  Are you all ready then?

7           MR. COOPER:  Yes, Your Honor.

8           THE COURT:  Has the statement of facts been

9   signed?

10          MR. COOPER:  Yes, Your Honor.  The copy is right

11  here.

12          MS. SMALKY:  And, Your Honor, for the statement of

13  facts, in order to clarify that the statement of facts is to

14  the -- is for a pleading to the indictment instead of just

15  as to Count 1, as it was originally written.  There was one

16  edit that I've crossed out in paragraph 10, and it should be

17  marked on that copy as well.

18          THE COURT:  It is.  It is.

19          MS. SMALKY:  Okay.  So simply to strike that

20  language.

21          THE COURT:  That's fine.

22          All right.  Mr. Richards, come up to the lectern.

23          THE DEFENDANT:  Good morning.

24          THE COURT:  Good morning.

25          THE DEPUTY CLERK:  Please raise your right hand.

3

```
1                    (Defendant sworn in open court.)

2               THE DEPUTY CLERK:  Thank you.

3               THE COURT:  All right.  Mr. Richards, you have

4    just taken a promise to tell the truth in answering all of

5    the Court's questions.  That means that if you should lie in

6    answering any question, the Government could prosecute you

7    for a new and separate crime called perjury; do you

8    understand that?

9               THE DEFENDANT:  Yes, ma'am.

10              THE COURT:  For the record, what is your full

11   name?

12              THE DEFENDANT:  Kodie Matthew Richards.

13              THE COURT:  How old are you?

14              THE DEFENDANT:  28.

15              THE COURT:  How many years of schooling had you

16   finished?

17              THE DEFENDANT:  I graduated high school.

18              THE COURT:  Do you have any problem reading,

19   writing, understanding or speaking English?

20              THE DEFENDANT:  No, ma'am.

21              THE COURT:  Are you a United States citizen?

22              THE DEFENDANT:  Yes, ma'am.

23              THE COURT:  Are you presently on probation, parole

24   or supervised release from any other criminal case?

25              THE DEFENDANT:  I was on probation when I was
```

4

```
 1    arrested back in October.

 2              THE COURT:  And probation from what jurisdiction?

 3              THE DEFENDANT:  Alexandria.

 4              THE COURT:  For what charge?

 5              THE DEFENDANT:  It was a possession charge.

 6              THE COURT:  All right.  And what kind of back-up

 7    time do you have with the Alexandria authorities?

 8              THE DEFENDANT:  I believe it was a year --

 9              THE COURT:  All right.  And Mr. --

10              THE DEFENDANT:  -- of probation.

11              THE COURT:  Mr. Cooper, did you discuss with your

12    client the potential impact that a conviction in this case

13    might have on his state supervision?

14              MR. COOPER:  I did, Your Honor.

15              THE COURT:  Do you understand that Alexandria may

16    decide to revoke that probation because you were not of

17    uniform good behavior while under court supervision?

18              THE DEFENDANT:  Yes, ma'am.

19              THE COURT:  So you could get another year in

20    Alexandria besides whatever sentence you get from this

21    Court; do you understand that?

22              THE DEFENDANT:  Yes, ma'am.

23              THE COURT:  All right.  Are you at the present

24    time under the care of a doctor for any physical or mental

25    condition?
```

```
 1                THE DEFENDANT:  I see the doctor in Alexandria for
 2    just sleeping problems and anxiety problems.
 3                THE COURT:  And -- I'm sorry, and?
 4                THE DEFENDANT:  And anxiety.
 5                THE COURT:  Anxiety, all right.
 6                THE DEFENDANT:  Yes, ma'am.
 7                THE COURT:  Are you taking any medication for
 8    either of those two conditions?
 9                THE DEFENDANT:  Yes, ma'am.
10                THE COURT:  What are you taking?
11                THE DEFENDANT:  Trazodone.
12                THE COURT:  And that's to help you sleep?
13                THE DEFENDANT:  Yes, ma'am.
14                THE COURT:  All right.  Did you have it last
15    night?
16                THE DEFENDANT:  Yes, ma'am.
17                THE COURT:  Did you sleep well last night?
18                THE DEFENDANT:  Yes, ma'am.
19                THE COURT:  All right.  Other than those
20    medications, within the last 24 hours, have you taken any
21    kind of medication whether by prescription or
22    over-the-counter like an aspirin or an Advil?
23                THE DEFENDANT:  No, ma'am.
24                THE COURT:  Are you at this time under the
25    influence of any alcohol or drugs?
```

1          THE DEFENDANT:  No, ma'am.

2          THE COURT:  All right.  It's my understanding

3  there was a proposed plea agreement or two plea agreements,

4  and that you have chosen not to enter into either of them;

5  is that correct?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  All right.  And my understanding is

8  that you are prepared to enter a guilty plea to the two

9  counts that are sitting in the indictment; is that right?

10         THE DEFENDANT:  Yes, ma'am.

11         THE COURT:  All right.  Now, Count 1 charges you

12  under Section 371 of the U.S. code with being a member of a

13  conspiracy.  The basis of the conspiracy was basically to

14  obtain a firearm using illegal means basically; do you

15  understand that?

16         THE DEFENDANT:  Yes, ma'am.  Yes, ma'am.

17         THE COURT:  And Count 2 alleges that you were

18  aiding and abetting in the making of a false statement in

19  connection with the acquisition of a firearm.

20         THE DEFENDANT:  Yes, ma'am.

21         THE COURT:  All right.  Now, each of those counts

22  I believe has the same penalty provision.

23         Is that correct, Ms. Smalky?

24         MS. SMALKY:  Your Honor, the second count has a

25  ten-year maximum; the first count has a five year.

7

1          THE COURT:  What about the supervised release?

2          MS. SMALKY:  I believe both are three years.

3          MR. COOPER:  That's correct, Your Honor.

4          THE COURT:  All right.  So each of these two

5    counts is a felony, and each exposes you to the following

6    sentence.  Count 1, which is the conspiracy count, exposes

7    you to up to five years of imprisonment followed by up to

8    three years of supervised release.  You could be required to

9    pay a fine of up to $250,000, and there's an automatic $100

10   special assessment; do you understand that?

11         THE DEFENDANT:  Yes, ma'am.

12         THE COURT:  For the second count, which is the

13   aiding and abetting of the firearm illegally -- or making a

14   false statement to a firearms dealer in connection to the

15   purchase of a firearm, you're looking up to ten years of

16   imprisonment followed by up to three years of supervised

17   release, another fine of up to $250,000, and a $100 special

18   assessment; do you understand that?

19         THE DEFENDANT:  Yes, ma'am.

20         THE COURT:  Now, the special assessments are

21   cumulative.  That means you're looking at $200 total of

22   special assessments; do you understand that?

23         THE DEFENDANT:  Yes, ma'am.

24         THE COURT:  All right.  To that first count, that

25   is the conspiracy count, how do you want to plead?

```
 1              THE DEFENDANT:  Guilty.

 2              THE COURT:  And to the second count, that is the

 3    false statement in connection of the acquisition of a

 4    firearm, how do you want to plead?

 5              THE DEFENDANT:  Guilty.

 6              THE COURT:  Now, before the Court accepts either

 7    of those two pleas, I'm going to ask you a series of

 8    questions about your decision to plead guilty, as well as

 9    the facts of the case.

10              At any point this morning if you decide that you

11    want to change your mind and enter a not guilty plea as to

12    either one or both of those charges, then we will allow you

13    to do so, and this case is set for trial in the very near

14    future and your case would just go to trial; do you

15    understand that?

16              THE DEFENDANT:  Yes, ma'am.

17              THE COURT:  Do you believe that anybody has

18    promised or suggested to you that by pleading guilty rather

19    than going to trial you will get a lighter sentence or more

20    favorable treatment by the Court?

21              THE DEFENDANT:  No, ma'am.

22              THE COURT:  Has anyone put any force or pressure

23    on you this morning to make this decision to not accept the

24    plea agreements but instead to plead to the indictment?

25              THE DEFENDANT:  No, ma'am.
```

```
 1            THE COURT:  All right.  Now, I want to make sure

 2   you understand in the Federal system, parole does not exist.

 3   And that means whatever term of imprisonment that you

 4   receive in this case you will serve entirely; do you

 5   understand that?

 6            THE DEFENDANT:  Yes, ma'am.

 7            THE COURT:  When the prison portion of the

 8   sentence has been completed, that's when the supervised

 9   release portion will go into effect.  When a person is on

10   supervised release, he's under the control of a Federal

11   probation officer, and there may be various conditions he

12   has to follow.  You may have to avoid certain people, you

13   may have to go for drug testing.  I can't tell you those

14   conditions yet because I haven't seen the presentence

15   report.

16            The key fact you do have to understand is that if

17   you violate any condition of supervision, you can be brought

18   back to court, and if the violation is established, then you

19   can be sent back to prison for as long as the period of

20   supervised release, which could be as much as three years in

21   this case; do you understand that?

22            THE DEFENDANT:  Yes, ma'am.

23            THE COURT:  Now, when it comes time for

24   sentencing, the Court will be looking at two sources of law.

25   First, the Federal Sentencing Guidelines, and second you'll
```

                                                              10

1  be looking at the 3553(a) factors.

2          Now, under the guidelines, the Court has to make

3  two decisions before the guidelines can be calculated.

4  First, we have to determine your criminal history.  Criminal

5  history is divided into six categories with each category

6  getting a number.  A Number 1 criminal history would go to

7  someone who's never been in trouble with the law or has a

8  very minor record.  And then as convictions, probation

9  violations and other issues occur, the score goes up, with a

10 level six going to the most serious offenders; do you

11 understand that?

12         THE DEFENDANT:  Yes, ma'am.

13         THE COURT:  Now, Mr. Cooper, I assume you've done

14 some preliminary evaluation of your client's criminal

15 history?

16         MR. COOPER:  I have, Your Honor, and we discussed

17 it and various options that he had, including cooperation

18 versus non-cooperation and the points.  And we've had a long

19 discussion about it, Your Honor.

20         THE COURT:  What do you think your client's

21 criminal history will be, since this offense may have

22 occurred while he was on probation?  He'll pick up extra

23 points for that.

24         MR. COOPER:  Court's indulgence.

25         Your Honor, I think his base offense level is

                                                          11

```
 1    around 20, and depending on how his score is, I believe he's

 2    a Group 3.  It may be pushed into a Group 4.  It sort of

 3    depends.

 4              THE COURT:  All right.  And I assume from your

 5    discussion you've spent a fair amount of time with

 6    Mr. Richards talking about how the guidelines operate?

 7              MR. COOPER:  Yes, Your Honor.

 8              THE COURT:  Mr. Richards, just so you're crystal

 9    clear.  So the Court determines the criminal history number,

10    and it's based, as I said, upon convictions.  You'd

11    definitely pick up extra points if you commit an offense

12    while you're on supervision, and there are other issues that

13    can affect the score.  Then we look at the offense level.

14    Every Federal crime has a number given to it by the

15    Sentencing Commission and then depending on the facts of the

16    case, that number can go up or down.

17              A factor that can help the number go down is full

18    acceptance of responsibility.  In that case, two levels can

19    be reduced.  I think under your proposed plea agreement, the

20    Government was going to offer you a third level reduction if

21    you fully cooperated and the offense was at least a 16.

22              But that plea agreement does not apply at this

23    point.  They could still make that motion, but they're not

24    required to make it in any respect; do you understand that?

25              THE DEFENDANT:  Yes, ma'am.
```

1          THE COURT:  But at the end of the day, the Court

2     will make the final decision as to your criminal history and

3     the offense level, and then those two numbers are put on a

4     one-page chart called a Sentencing Guideline Table, and that

5     will establish an advisory guideline range.

6          Now, the Court has to look at that range and

7     consider it, but the Court is not required to sentence

8     within it.  And if the Court has good reasons, it can

9     sentence above the range or below the range.  The only limit

10    on the Court's sentencing power is we cannot sentence you to

11    more than the statutory maximums, which, for Count 1, is

12    five years of imprisonment; and for Count 2, it would be

13    ten years; do you understand that?

14          THE DEFENDANT:  Yes, ma'am.

15          THE COURT:  In addition to the guidelines, the

16    Court must also look at the 3553(a) factors.  So that

17    requires us to look in detail at your entire background,

18    your family situation, your work history, any health issues

19    that might affect your conduct.  We need to look at the

20    actual conduct that you engaged in in these two offenses,

21    the need to deter you, that is to prevent you, from engaging

22    in other criminal activity or repeating this activity, and

23    the need to send out messages, especially for this type of

24    crime where people think that they can violate the laws

25    concerning the obtaining of firearms.  So there's a lot of

```
1    factors that go into the sentencing decision; do you

2    understand that?

3              THE DEFENDANT:  Yes, ma'am.

4              THE COURT:  Now, from what Mr. Cooper has said, it

5    sounds like you've spent a fair amount of time talking with

6    him about the possible sentence you might get.

7              Have you had those types of discussions?

8              THE DEFENDANT:  Yes, ma'am.

9              THE COURT:  And it's possible, because it looks as

10   though at one point you might have been thinking about

11   cooperating with the Government, that you may have been

12   talking with the agents or with the prosecutors about the

13   case, and they may have given you some ideas about your

14   sentence.  Has that happened?

15             THE DEFENDANT:  I just -- mainly my lawyer, Your

16   Honor.

17             THE COURT:  All right.  Well, what I want to make

18   sure you understand is no matter what Mr. Cooper may have

19   said to you about what he thinks your guidelines will be or

20   what type of sentence you might get or if any of the

21   co-defendants in this case or anyone else has given you some

22   ideas about what type of sentence you might get, you need to

23   understand that those conversations are not binding on the

24   Court in any respect.  And so if at the time the Court

25   imposes a sentence on you that's different from what you
```

14

1  might be expecting or hoping for, that would not give you a

2  basis to withdraw your guilty pleas; do you understand that?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  Now, do you understand that under the

5  law, a person can normally appeal the sentence imposed on

6  him, and you will still have that right to appeal whatever

7  sentence you receive.

8          Defendants normally have a right to appeal their

9  convictions, but when a person is found guilty based upon a

10 guilty plea, you essentially pretty much give up any of the

11 appeal rights that you might have; do you understand that?

12         THE DEFENDANT:  Yes, ma'am.

13         THE COURT:  Have you had enough time to explain

14 everything you know about this case to Mr. Cooper?

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  Has he discussed with you the nature

17 of the charge -- of these two charges and any ways in which

18 you could defend yourself against the charges if you went to

19 trial?

20         THE DEFENDANT:  Yes, ma'am.

21         THE COURT:  And, Mr. Cooper, did you get discovery

22 in this case?

23         MR. COOPER:  I did, Your Honor.

24         THE COURT:  Do you feel it was fairly thorough?

25         MR. COOPER:  Very thorough.

                                                    15

1              THE COURT:  And were you able to fully discuss

2    that discovery with Mr. Richards?

3              MR. COOPER:  Yes, Your Honor.

4              THE COURT:  All right.  And did you keep

5    Mr. Richards fully advised about your plea bargaining

6    efforts on his behalf?

7              MR. COOPER:  Yes.

8              THE COURT:  Now, Mr. Richards, Number 1, are you

9    fully satisfied with the way in which Mr. Cooper tried to

10   work a plea out for you in this case?

11             THE DEFENDANT:  I am, Your Honor.

12             THE COURT:  And are you completely satisfied with

13   the way in which Mr. Cooper has represented you throughout

14   this case?

15             THE DEFENDANT:  Yes, ma'am.

16             THE COURT:  Now, do you understand that at this

17   time, you still have a right to change your mind and

18   withdraw either one or both of your guilty pleas, in which

19   case this case would go to trial, as I said, within the next

20   couple of weeks; do you understand that?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:  At trial, the burden would be on the

23   Government to prove you guilty of each offense, and that is

24   the burden of proof beyond a reasonable doubt.  At trial,

25   you would have absolutely no obligation to put on any

16

1   evidence whatsoever because you would start the trial with a

2   presumption of innocence; do you understand that?

3           THE DEFENDANT:  Yes, ma'am.

4           THE COURT:  But in order for the Government to

5   convict you of Count 1, which is the conspiracy count,

6   they'd have to prove each and every one of the following

7   facts beyond a reasonable doubt.

8           They would, first of all, have to prove that there

9   was, in fact, an agreement between at least two people.  And

10  they've identified three members of this conspiracy, Stephen

11  Amir Derri, yourself, and Brittani Agee.  So that's the

12  conspiracy they've alleged.

13          And a conspiracy is basically an agreement between

14  two or more people to do something the law forbids.  So

15  they, first of all, have to show that during this relatively

16  short ten-day time period, that is March 15 through March 25

17  of 2021, there was an agreement among the three of you.

18          Secondly, they have to prove that the purpose of

19  the agreement was to obtain a Glock 21 .45 caliber

20  semiautomatic pistol from a licensed firearm dealer.

21          Then they would have to prove that during the

22  course of that conspiracy, at least one member of the

23  conspiracy knowingly made or aided and abetted in the making

24  of a materially false statement.  I'm sorry.  One of the

25  members of the conspiracy made a false statement about

                                                              17

```
1    the -- that was material to the purchase of that firearm by

2    putting false information on a Form 4473, which is the

3    required form for getting a firearm; do you understand that?

4              THE DEFENDANT:  Yes, ma'am.

5              THE COURT:  They have to prove beyond a reasonable

6    doubt that any -- that at least one act in furtherance of

7    this conspiracy occurred in the Eastern District of

8    Virginia; do you understand that?

9              THE DEFENDANT:  Yes, ma'am.

10             THE COURT:  And as I recall, the firearm dealer

11   was in Virginia.

12             And, lastly, they have to prove that your

13   involvement in the conspiracy was done knowingly and

14   intentionally and not by an accident or mistake or other

15   innocent reason; do you understand that?

16             THE DEFENDANT:  Yes, ma'am.

17             THE COURT:  And in the indictment, they listed

18   several overt acts from paragraph 6 through paragraph 15 of

19   the indictment.  And with a Section 371 conspiracy, the

20   Government must prove beyond a reasonable doubt that at

21   least one of those overt acts was committed by at least one

22   of the members of the conspiracy.  It doesn't have to be

23   you, but it would have to be at least one of the members of

24   the conspiracy; do you understand that?

25             THE DEFENDANT:  Yes, ma'am.
```

18

1          THE COURT:  So that's what they would have to

2    prove in order to convict you of Count 1.

3          And then with Count 2, they would have to prove

4    that during that same time period that you aided and abetted

5    the making of the false or fictitious statement in the

6    purchase of that firearm.  That's essentially what they

7    would have to prove; do you understand that?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  And again, they would have to prove

10   that you knowingly and intentionally were a participant in

11   those activities; do you understand that?

12         THE DEFENDANT:  Yes, ma'am.

13         THE COURT:  Now, if you pled not guilty and went

14   to trial, you would have a series of rights and protections

15   at trial that you're essentially giving up by pleading

16   guilty.  First, you can see all the Government's witnesses

17   and evidence and have it tested through the questions of

18   Mr. Cooper; do you understand that?

19         THE DEFENDANT:  Yes, ma'am.

20         THE COURT:  You could ask the Court for help in

21   getting subpoenas that would require other witnesses and/or

22   physical evidence to be brought to the courthouse so you

23   could use that in your defense at trial; do you understand

24   that?

25         THE DEFENDANT:  Yes, ma'am.

                                                          19

1          THE COURT:  You could testify as a witness at

2     trial; do you understand that?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  You could also invoke your Fifth

5     Amendment right to remain silent, and if you chose not to

6     testify, your inference of guilt could not be drawn from

7     your silence; do you understand that?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  Now, you chose to have a jury trial

10    when you were arraigned, and that means you would pull 12

11    people together randomly to decide your case.  The other way

12    in which a case can be tried is through a judge alone, which

13    we would call a bench trial.  But in either type of trial,

14    the same burden is on the prosecution, and that is you could

15    not be found guilty unless the Government proved you guilty

16    beyond a reasonable doubt.  And the fact that you might be

17    found guilty beyond a reasonable doubt is as to one count

18    doesn't necessarily mean you would have been found guilty of

19    the second count.  So each count would be evaluated

20    separately by the trier of fact; do you understand that?

21         THE DEFENDANT:  Yes, ma'am.

22         THE COURT:  And in the case of the jury trial, in

23    order for the jury to return a verdict, all 12 jurors must

24    agree.  That means if just one juror has a reasonable doubt

25    about your guilt, that jury could not convict you.  It would

                                                              20

```
 1    be what we call a hung jury, we would have to declare a
 2    mistrial, and then you would have a right to a new trial
 3    with a new jury; do you understand that?
 4              THE DEFENDANT:  Yes, ma'am.
 5              THE COURT:  Now, if you continued with a not
 6    guilty plea, Mr. Cooper could try to attack the
 7    prosecution's case.  I can't recall if any motions were
 8    filed in this case pretrial, but certainly during the trial
 9    itself, he could attack certain pieces of evidence that the
10    Government might try to bring in.  He could try to argue
11    that any confessions or statements that you made should not
12    come in because you didn't get Miranda warnings or there
13    were other problems.  I don't know what, if any, defenses
14    you might have, but you need to understand that when a
15    person pleads guilty, he gives up every attack on the
16    prosecution's case except for an attack on the jurisdiction
17    of the Court; do you understand that?
18              THE DEFENDANT:  Yes, ma'am.
19              THE COURT:  And, lastly, if you pled not guilty
20    and you went to trial and you were found guilty at trial,
21    you could appeal that finding of guilt to a higher-level
22    court.
23              Do you understand that because of the way the law
24    is structured by pleading guilty, you're giving up your
25    right to appeal your convictions?
```

                                                          21

1              THE DEFENDANT:  Yes, ma'am.

2              THE COURT:  All right.  Do you believe that

3    anybody -- and I'll just repeat this.

4              Do you believe that anybody has promised or

5    suggested to you that by pleading guilty rather than going

6    to trial you will get a lighter sentence or more favorable

7    treatment by the Court?

8              THE DEFENDANT:  No, ma'am.

9              THE COURT:  Has anyone put any force or pressure

10   on you to make your decision today to plead guilty?

11             THE DEFENDANT:  No, ma'am.

12             THE COURT:  Has anyone put any force or pressure

13   on you today to reject the plea agreements that were offered

14   to you by the Government?

15             THE DEFENDANT:  No, ma'am.

16             THE COURT:  All right.  The last thing we need to

17   look at then is the statement of facts which has been filed

18   in court.  And the first thing I want to make sure is I see

19   on page 4 it appears to be your signature and today's date.

20             THE DEFENDANT:  Yes, ma'am.

21             THE COURT:  Did you, in fact, sign the statement

22   of facts?

23             THE DEFENDANT:  Yes, ma'am.

24             THE COURT:  And before you signed the statement of

25   facts, did you carefully read over the 11 numbered

22

```
1    paragraphs above your signature?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  And do you understand that by signing

4    the statement of facts, you've done two things.  One, you

5    are admitting to the truth of everything in those 11

6    paragraphs; and second, you are admitting that if the case

7    went to trial, the Government could prove all those facts

8    beyond a reasonable doubt; do you understand that?

9              THE DEFENDANT:  Yes, ma'am.

10             THE COURT:  All right.  So as I understand it, you

11   do agree that between March 15 and March 25 of 2021 that you

12   knowingly and intentionally conspired with Stephen Amir

13   Derri and Brittani Sabrina Agee in connection with the

14   purchase of a firearm; is that correct?

15             THE DEFENDANT:  Yes, ma'am.

16             THE COURT:  And that you knew that a false and

17   fictitious written statement was going to be made to the

18   Vienna Arsenal, which is a Federally-licensed firearms

19   dealer in this jurisdiction, and that that statement was

20   intended to deceive Vienna Arsenal with respect to a

21   material fact that's necessary to make the sale lawful; do

22   you understand all that?

23             THE DEFENDANT:  Yes, ma'am.

24             THE COURT:  All right.  And it says here in

25   furtherance of the conspiracy that you, along with the
```

23

1   co-conspirators, arranged to go to the Vienna Arsenal to

2   purchase the firearm for Derri who did not live in Virginia

3   and was prohibited from purchasing or possessing a firearm

4   due to having prior felony convictions; is that correct?

5           THE DEFENDANT:  Yes, ma'am.

6           THE COURT:  Now, did you know Derri before all

7   this happened?

8           THE DEFENDANT:  Yes, ma'am.

9           THE COURT:  Was he your friend?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  How long had you known him?

12          THE DEFENDANT:  Maybe like a year and a half,

13  two years.

14          THE COURT:  All right.  And how did this all come

15  about?  How was it that you decided to get involved with

16  this?

17          THE DEFENDANT:  I purchased drugs from him, Your

18  Honor.  That's how I knew him.

19          THE COURT:  What kind of drugs were you buying

20  from him?

21          THE DEFENDANT:  Percocets.  They were like fake

22  Percocets.  Pretty much fentanyl.

23          THE COURT:  All right.  And how did it come about

24  that he asked you to help him get a gun?

25          THE DEFENDANT:  Basically to get more Percocets

24

```
 1    for myself.

 2              THE COURT:  So, in other words, he said if you

 3    want to get more Percocets, you've got to help me get a gun?

 4    What happened?

 5              THE DEFENDANT:  Yeah.  He offered me more to do it

 6    for him, yes, ma'am.

 7              THE COURT:  All right.  And then it says that you

 8    and Agee -- what's your relationship with Ms. Agee?

 9              THE DEFENDANT:  That's my son's mother.

10              THE COURT:  All right.  Were you living together

11    at the time?

12              THE DEFENDANT:  Yes, ma'am.

13              THE COURT:  All right.  It says in paragraph 2

14    that you and she traveled together to Vienna Arsenal on

15    March 15, 2021.

16              Who chose Vienna Arsenal?

17              THE DEFENDANT:  I did.  I found it online.

18              THE COURT:  You just found it online?

19              THE DEFENDANT:  Yes, ma'am.

20              THE COURT:  All right.  And you went there, and

21    then you and she went into the store, the Arsenal together;

22    is that correct?

23              THE DEFENDANT:  Yes, ma'am.

24              THE COURT:  Now, did you know what type of gun you

25    were supposed to get?
```

25

1            THE DEFENDANT:  No, not at the time.

2            THE COURT:  At some point did you?

3            THE DEFENDANT:  I knew we were looking for a

4   Glock.  I just -- I didn't know which ones they had at the

5   time.

6            THE COURT:  All right.  Did Derri have a

7   particular type of gun that he wanted?

8            THE DEFENDANT:  A Glock 30.

9            THE COURT:  And he had told you that?

10           THE DEFENDANT:  Yes, ma'am.

11           THE COURT:  All right.  And did you know at the

12   time that it was illegal for him to purchase a firearm?

13           THE DEFENDANT:  Yes, ma'am.

14           THE COURT:  And how did you know that?

15           THE DEFENDANT:  I knew that he was a felon, Your

16   Honor.

17           THE COURT:  He had a felony conviction?

18           THE DEFENDANT:  Yes, ma'am.

19           THE COURT:  All right.

20           THE DEFENDANT:  And I knew he lived in D.C.

21           THE COURT:  All right.  And so did you also know

22   that you have to fill out a form with the firearms dealer to

23   get --

24           THE DEFENDANT:  I knew there was a background

25   check.  I wasn't sure about the form.

                                                          26

```
 1              THE COURT:  All right.  Now, it's my
 2  understanding -- you didn't fill out the form; did you?
 3              THE DEFENDANT:  No, ma'am.
 4              THE COURT:  Ms. Agee did?
 5              THE DEFENDANT:  Yes, ma'am.
 6              THE COURT:  Why didn't you fill it out?
 7              THE DEFENDANT:  Because I don't have any felonies,
 8  but I have a lot of misdemeanors, so I thought it would be
 9  harder for me to get a gun.
10              THE COURT:  All right.  So you asked her to do it?
11              THE DEFENDANT:  Yes, ma'am.
12              THE COURT:  All right.  And it goes on here to
13  talk about how that was done.
14              Do you agree that Derri sent you $100 in cash?
15              THE DEFENDANT:  On Cash App, yes, he did, ma'am.
16              THE COURT:  All right.  So he didn't pay you in
17  drugs; he paid you in cash?
18              THE DEFENDANT:  That was part of the -- because
19  while we were there, I bought drugs from him while we were
20  in the parking lot waiting for her.  So that was part of
21  that.  I never got paid for the gun because we never got it
22  to him.
23              THE COURT:  All right.  Do you understand that if
24  the Court accepts your guilty plea today, or pleas today,
25  there will be no further trial of the issues and you'll be
```

 1   found guilty of both charges?

 2            THE DEFENDANT:  Yes, ma'am.

 3            THE COURT:  Do you claim in any respect that

 4   you're innocent of the conspiracy count?

 5            THE DEFENDANT:  No.

 6            THE COURT:  How then do you plead?

 7            THE DEFENDANT:  Guilty.

 8            THE COURT:  Do you claim in any respect that

 9   you're innocent of Count 2, which is aiding and abetting and

10   making a false statement?

11            THE DEFENDANT:  No, ma'am.

12            THE COURT:  How then do you plead to that charge?

13            THE DEFENDANT:  Guilty.

14            THE COURT:  All right.  Mr. Cooper, have you had

15   enough time to go over both pleas with your client?

16            MR. COOPER:  Yes, Your Honor.

17            THE COURT:  Do both fully accord with your

18   understanding of the facts and circumstances?

19            MR. COOPER:  Yes, Your Honor.

20            THE COURT:  In your opinion, have both of those

21   guilty pleas been made in a voluntary and knowing fashion by

22   your client?

23            MR. COOPER:  Yes, Your Honor.

24            THE COURT:  Are you aware of any pressure that may

25   have been brought upon your client to proceed this way

                                                          28

1  rather than with the plea?

2          MR. COOPER:  No.

3          THE COURT:  I mean, because, you know, the offer

4  that the Government made exposed the defendant to only five

5  years.  He was only pleading to the conspiracy count, as I

6  recall.  With this plea, of course, he's exposing himself to

7  twice the amount of time.

8          MR. COOPER:  There was a particular issue, Your

9  Honor, with what the Government wanted him to do, and my

10 client just could not, so he decided to go forward with just

11 pleading to the indictment.

12         THE COURT:  All right.  Mr. Richards, the Court is

13 satisfied that you've entered your guilty pleas with the

14 full advice of competent counsel, that you've entered both

15 pleas in a knowing and voluntary fashion, and that the

16 statement of facts and your admission in court today is more

17 than enough evidence upon which to find you guilty of both

18 felony counts.  So the Court accepts your guilty pleas,

19 which I do find were fully, knowingly and voluntarily made,

20 although perhaps not as wisely as they should have been, and

21 I will find you guilty of both counts.

22         I do want to advise you that you still have a

23 right at any point to decide to cooperate with the

24 Government, and if you do, that may assist you with your

25 sentence; do you understand that?

                                                        29

1           THE DEFENDANT:  Yes, ma'am.

2           THE COURT:  All right.  We need to set this case

3    for sentencing.

4           MR. COOPER:  Your Honor, in determining a

5    sentencing date, I am out of the area the end of July and

6    most of August, and then on September 4th I start a six- to

7    eight-week co-defendant matter in D.C. Superior Court.

8           I know that that judge has Fridays off.  If this

9    court can possibly set sentencing for Mr. Derri -- pardon

10   me, Mr. Richards towards the end of September, maybe

11   September 23rd, which is a Friday.

12          THE COURT:  So you're out of the country for the

13   whole month of August?

14          MR. COOPER:  We are out of this area from

15   July 28th, we come back for a day, and then we're out of the

16   country.  It's our first time leaving anywhere since COVID.

17          THE COURT:  All right.  So July 28th is a

18   Thursday.  We could do this it's a little -- oh, I can't.  I

19   really don't want to push it that far down.

20          MR. COOPER:  Your Honor, could we do it --

21   actually, we're leaving on the 28th, I apologize.  If we

22   could do it the 26th or the 27th?

23          THE COURT:  Yeah.  I -- the 27th is a possibility.

24   Let me just think.

25          MS. SMALKY:  Your Honor --

                                                        30

```
 1              MR. COOPER:  Or that Monday as well, the 25th.

 2              THE COURT:  That's not available on my calendar.

 3              MS. SMALKY:  Your Honor, I expect to be -- I'll be

 4    out of town that week.  Is it possible to do it the prior

 5    week?

 6              THE COURT:  That's cutting probation pretty short.

 7              MS. SMALKY:  If not, I do have co-counsel who may

 8    be able to --

 9              THE COURT:  Well, we could do it on Friday,

10    July 22nd.

11              Does that work for you, Mr. Cooper?

12              MR. COOPER:  Your Honor, I have a trial that's

13    going to be on the 21st.  It should only be a day.  I can

14    move two matters on the 22nd to the afternoon probably.

15              What time would the Court want to do this?

16              THE COURT:  9:00.

17              MR. COOPER:  That should be fine, Your Honor.

18              THE COURT:  All right.  Let's do that, because I

19    really don't want to push this off into September.

20              All right.  So that's going to be Friday,

21    July 22nd at 9:00 for sentencing.  I am going to assume,

22    Mr. Richards, that you're getting credit for this time --

23    you're not on State time right now -- against your final

24    sentence.  You will be visited in your cell by a Federal

25    probation officer.  Your full cooperation with the officer
```

31

```
1    is to your advantage; do you understand that?
2              THE DEFENDANT:  Yes, ma'am.
3              THE COURT:  And as I said, you still have, and I'm
4    sure Mr. Cooper will discuss this with you, opportunities to
5    assist yourself with any cooperation.  That does certainly
6    work to your favor with sentencing; do you understand that?
7              THE DEFENDANT:  Yes, ma'am.
8              THE COURT:  All right.  Anything further we need
9    to address with this case?
10             MR. COOPER:  Not from the defense, Your Honor.
11   Thank you.
12             THE COURT:  How about from the Government?
13             MS. SMALKY:  Your Honor, just all the deadlines
14   associated with the trial date be canceled by the Court.
15             THE COURT:  For this defendant, of course.
16             MS. SMALKY:  For this defendant only.  Yes.
17             THE COURT:  Mr. Derri is still scheduled.
18   Although you need to let us -- yeah.  All right.  That's
19   fine.
20             If there's nothing further, then we'll recess
21   court for the day.
22                 (Proceedings adjourned at 10:01 a.m.)
23             ----------------------------------
24   I certify that the foregoing is a true and accurate
25   transcription of my stenographic notes.
```

                                                                32

*Stephanie Austin*

Stephanie M. Austin, RPR, CRR

33